# CENTRAL LUMBER COMPANY *v.* STATE OF SOUTH DAKOTA.

ERROR TO THE SUPREME COURT OF THE STATE OF SOUTH DAKOTA.

No. 51.   Argued November 13, 14, 1912.—Decided December 2, 1912.

Regulating discriminatory sales made within the State for the purpose of destroying competition is within the legislative power of the State unless the statute conflicts with the Constitution of the United States.

The legislature of a State may direct its police regulations against what it deems an existing evil without covering the whole field of possible abuses. It may direct a law for the protection of trade in accord with its policy against one particular instrument of trade war.

The Fourteenth Amendment does not prohibit state legislation special in character. The legislature may deal with a class which it deems a conspicuous example of what it seeks to prevent, although logically that class may not be distinguishable from others not embraced by the law.

A classification that logically affects only those who deal in more than one place in the State is not necessarily so unreasonable as to amount to denial of equal protection of the laws.

This court cannot review the economics or facts on which the legislature of a State bases its conclusions that an existing evil should be remedied by an exercise of the police power.

The enactment of police statutes regulating discrimination in prices for the purpose of destroying competition in several States demonstrates that there is a widespread conviction in favor of such regulation.

Chapter 131 of the Laws of South Dakota of 1907, prohibiting unfair discrimination by anyone engaged in manufacture or distribution of a commodity in general use for the purpose of intentionally destroying competition of any regular dealer in such commodity by making sales thereof at a lower rate in one section of the State than in other sections, after equalization for distance, is a constitutional exercise of the police power of the State and is not unconstitutional under the Fourteenth Amendment as depriving persons having more than one place of business in the State of their property without due process of law, or as denying them the equal protection of the laws, or as abridging their liberty of contract.

Where the highest court of a State has construed a statute as aiming at the prevention of a monopoly in a commodity by means likely to be employed and prohibited by the statute, this court should read the statute as having ultimately in view the benefit of buyers of the goods.

24 So. Dak. 136, affirmed.

THE facts, which involve the constitutionality under the Federal Constitution of the "one price" statute of the State of South Dakota, are stated in the opinion.

*Mr. David. F. Simpson,* with whom *Mr. L. L. Brown, Mr. Wm. A. Lancaster* and *Mr. Milton D. Purdy* were on the brief, for plaintiff in error.

*Mr. Royal C. Johnson,* Attorney General of the State of South Dakota, *Mr. Samuel W. Clark* and *Mr. James M. Brown,* for defendant in error.

MR. JUSTICE HOLMES delivered the opinion of the court.

The plaintiff in error was found guilty of unfair discrimination under Session Laws of South Dakota for 1907, c. 131, and was sentenced to a fine of two hundred dollars and costs. It objected in due form that the statute was contrary to the Fourteenth Amendment, but on appeal the judgment of the trial court was sustained. 24 So. Dak. 136. By the statute anyone "Engaged in the production, manufacture or distribution of any commodity in general use, that intentionally, for the purpose of destroying the competition of any regular, established dealer in such commodity, or to prevent the competition of any person who in good faith intends and attempts to become such dealer, shall discriminate between different sections, communities, or cities of this state, by selling such commodity at a lower rate in one section . . . than such person . . . charges for such commodity in another section, . . . after equalizing the distance from the point of production," &c., shall be guilty of the crime and liable to the fine.

The subject-matter, like the rest of the criminal law, is under the control of the legislature of South Dakota, by virtue of its general powers, unless the statute conflicts as alleged with the Constitution of the United States. The grounds on which it is said to do so are that it denies the equal protection of the laws, because it affects the conduct of only a particular class—those selling goods in

two places in the State—and is intended for the protection of only a particular class—regular established dealers; and also because it unreasonably limits the liberty of people to make such bargains as they like.

On the first of these points it is said that an indefensible classification may be disguised in the form of a description of the acts constituting the offence, and it is urged that to punish selling goods in one place lower than at another in effect is to select the class of dealers that have two places of business for a special liability, and in real fact is a blow aimed at those who have several lumber yards along a line of railroad, in the interest of independent dealers. All competition, it is added, imports an attempt to destroy or prevent the competition of rivals, and there is no difference in principle between the prohibited act and the ordinary efforts of traders at a single place. The premises may be conceded without accepting the conclusion that this is an unconstitutional discrimination. If the legislature shares the now prevailing belief as to what is public policy and finds that a particular instrument of trade war is being used against that policy in certain cases, it may direct its law against what it deems the evil as it actually exists without covering the whole field of possible abuses, and it may do so none the less that the forbidden act does not differ in kind from those that are allowed. *Lindsley* v. *Natural Carbonic Gas Co.*, 220 U. S. 61, 81. *Missouri Pacific Ry. Co.* v. *Mackey*, 127 U. S. 205.

That is not the arbitrary selection that is condemned in such cases as *Southern Ry. Co.* v. *Greene*, 216 U. S. 400. The Fourteenth Amendment does not prohibit legislation special in character. *Magoun* v. *Illinois Trust & Savings Bank*, 170 U. S. 283, 294. It does not prohibit a State from carrying out a policy that cannot be pronounced purely arbitrary, by taxation or penal laws. *Orient Insurance Co.* v. *Daggs*, 172 U. S. 557, 562. *Quong Wing* v. *Kirkendall*, 223 U. S. 59, 62. If a class is deemed to pre-

sent a conspicuous example of what the legislature seeks to prevent, the Fourteenth Amendment allows it to be dealt with although otherwise and merely logically not distinguishable from others not embraced in the law. *Carroll* v. *Greenwich Ins. Co.*, 199 U. S. 401, 411. We must assume that the legislature of South Dakota considered that people selling in two places made the prohibited use of their opportunities and that such use was harmful, although the usual efforts of competitors were desired. It might have been argued to the legislature with more force than it can be to us that recoupment in one place of losses in another is merely an instance of financial ability to compete. If the legislature thought that that particular manifestation of ability usually came from great corporations whose power it deemed excessive and for that reason did more harm than good in their State, and that there was no other case of frequent occurrence where the same could be said, we cannot review their economics or their facts. That the law embodies a widespread conviction appears from the decisions in other States. *State* v. *Drayton*, 82 Nebraska, 254. *State* v. *Standard Oil Co.*, 111 Minnesota, 85; 126 N. W. Rep. 527. *State* v. *Fairmont Creamery*, 153 Iowa, 702; 133 N. W. Rep. 895. *State* v. *Bridgeman & Russell Co.*, 117 Minnesota, 186; 134 N. W. Rep. 496.

What we have said makes it unnecessary to add much on the second point, if open, that the law is made in favor of regular established dealers—but the short answer is simply to read the law. It extends on its face also to those who intend to become such dealers. If it saw fit not to grant the same degree of protection to parties making a transitory incursion into the business, we see no objection. But the Supreme Court says that the statute is aimed at preventing the creation of a monopoly by means likely to be employed, and certainly we should read the law as having in view ultimately the benefit of buyers of the goods.

Finally, as to the statute's depriving the plaintiff in error of its liberty because it forbids a certain class of dealings, we think it enough to say that as the law does not otherwise encounter the Fourteenth Amendment, it is not to be disturbed on this ground. The matter has been discussed so often in this court that we simply refer to *Chicago, Burlington & Quincy R. R. Co.* v. *McGuire,* 219 U. S. 549, 567, 568, and the cases there cited to illustrate how much power is left in the States. See also *Grenada Lumber Co.* v. *Mississippi,* 217 U. S. 433, 442. *Lemieux* v. *Young,* 211 U. S. 489, 496. *Otis* v. *Parker,* 187 U. S. 606, 609.

*Judgment affirmed.*