Johnson, J.
The retention by the auditor of the amounts named in the petition was pursuant to Section 1261-40, General Code (Griswold act, 108 O. L., pt. 2, 1091), which provides that the aggregate amount fixed by the budget commissioners'for the health district shall be apportioned by the county auditor among the townships and municipalities composing the district on the basis of tax valuations in such townships and municipalities, and that “the *571 county auditor, when making his semi-annual apportionment of funds shall retain at each such semiannual apportionment one-half the amount so apportioned to each township and municipality. Such monies shall be placed in a separate fund, to be known as the ‘district health fund.’ ”
It is conceded that for the year 1919 taxes were collected in the village for public health, public safety, public service and general sinking fund purposes, and that the auditor retains in his hands $1,246.36 of the total amount collected. The sum named is the pro rata portion of the budget adopted for the year 1920 by the board of health of the general health district of Cuyahoga county, under the provisions of Section 2 of the Griswold act (108 O. L., pt. 2, 1092). For the first half of the year 1920 taxes were collected in the village for the purposes named, and also for general fund purposes, and out of the total the auditor retains $497.17, which is the pro rata portion of the budget adopted for the year 1921 by the same board of health under Section 1261-40, General Code (Griswold act). The plaintiff claims that the act of the auditor is unlawful, because the Griswold act, and the Hughes act, which it amends, are unconstitutional and void, and, further, that the retention of the 1919 tax money is contrary to law, because of the failure to comply with the provisions of those acts.
The Hughes health law was enacted in April,. 1919, 108 Ohio Laws, 236. It divided the state into health districts, of which each city of 25,000 or more population comprised a “municipal” health district, while all the remaining territory in a county com *572 prised a “general health district.” This act was amended by the Griswold act passed in December, 1919, 108 Ohio Laws, pt; 2, 1085 (Section 1261-16, General Code), which provides that each city shall constitute a city health district and that the townships and villages in each county shall be combined into a general health district.
Under the Hughes act, district boards of health chosen by the mayors of the municipalities and chairmen of . the trustees of townships had control of the health affairs of their respective districts.
Section 2 of the Griswold act (108 O. L., pt. 2, 1092), provides that members of the boards of health of general districts appointed under the Hughes act shall continue members of the boards of health of the general districts under the Gris-wold act, and the vacancies caused by nonresidence shall be filled as other vacancies. The Hughes act provided that budgets should be prepared by the board of health, which should be submitted to the auditor, and by him to the district advisory council provided for in the act. By the Griswold act (Section 1261-40, General Code), the budget is required to be transmitted by the auditor to the budget commission instead of to the district advisory council, the commission having power to reduce, but not increase the budget, and the amount fixed by the budget commission to be apportioned by the auditor among the townships and villages comprising the district on the basis of tax valuation, such amount to be retained by him in making the semiannual ap-portionments of taxes collected.
*573 Section 2 of the Griswold act (108 O. L., pt. 2, 1092) provided for the adoption of a budget for the year 1920 by each board of health within ten days of the taking effect of the law, and provided that the budget should be transmitted to the “auditor of the district, who shall submit the same to the district advisory council” within five days, and that the “district advisory council shall review such budget,” which when reviewed and approved “shall be apportioned among the townships and villages” as provided by the act.
It is contended that the acts are unconstitutional, and in support of this contention it is urged that their provisions violate Section 26, Article II of the Constitution, which provides that “All laws, of a general nature, shall have a uniform operation throughout the state.” Both the Hughes act and the Griswold act make a classification of cities, villages and townships, and contain provisions for the cities which are different from those relating to villages and townships. There is also a difference in the provisions relating to the officials and the.administrative powers of each. In other words, the legislature undertook to make a classification and made specific provisions with reference to the territory within the different classes. The legislature obviously felt that certain sections of the state are so populated as to make it advisable that there, should be a series of city health districts, as distinguished from the general health district for which it provided in other sections, and that the administrative machinery for the purpose of carrying out the law and accomplishing the purposes of the legis *574 lature should be somewhat different in the different districts.
The whole scheme of the legislation under examination is regulatory in its nature and was passed in the exercise of the police power. The necessity for classification in regulatory legislation in order .that it may be definite and efficient to accomplish its object has long been recognized.
In Steele, Hopkins & Meredith Co. v. Miller, 92 Ohio St., 115, that principle is stated, and it is held in the syllabus that “A statute is general and uniform, within the requirements of the constitution, if it operates equally upon every person and locality within the circumstances • covered by the act, and when a classification has a reasonable basis it is not invalid merely because not made with exactness or because in practice it may result in some inequality.” To the same effect are Central Lumber Co. v. State of South Dakota, 226 U. S., 157; Middleton v. Texas Power & Light Co., 249 U. S., 152; Hubbell v. Higgins, 148 Iowa, 36; City of Xenia v. Schmidt, 101 Ohio St., 437; State Board of Health v. City of Greenville, 86 Ohio St., 1; Cincinnati v. Steinkamp, Trustee, 54 Ohio St., 284; Gentsch v. State, ex rel. McGorray, 71 Ohio St., 151, and State, ex rel. Yaple, v. Creamer, Treasurer of State, 85 Ohio St., 349, 405.
In Board of Health v. Greenville, supra, it was claimed that a statute passed April, 1908, regarding the purification of sewage, was unconstitutional because it exempted all cities which discharged sewage into a river which separates the state of Ohio *575 from another state, so long as the unpurified sewage of cities and villages of other states is discharged into the river above such village or city, and it was contended that such classification was arbitrary, unnecessary, and unreasonable, but the court said, at page' 39: “There is a substantial reason for excluding from the operation of this statute those pers’ons, corporations, villages and cities located on the banks of a stream that separates Ohio from another state. It is not an attempt by the general assembly of Ohio to avoid the limitation of this provision of the constitution by a false, or faulty, classification, but on the contrary is a fair and honest effort to legislate for all the people of the state without unjust or arbitrary discrimination in favor of one class to the advantage of another. * * * Classification is not only proper, but sometimes absolutely necessary in legislation.”
It must be kept in mind that the legislation here attacked has for its sole object the preservation of the public health. Its aim is to provide an administrative agency by which the best contribution attainable under all the circumstances may be made to that end.
It is also contended that as the village of Cuya-hoga Heights has adopted a charter under the home-rule amendment, the legislature has no authority to divert the funds of the village to the use of the health district, and it is contended that the funds which are the proceeds of levies for village purposes are the property of the village. As to this it must be again remarked that this legislation is pur *576 suant to the intention of the legislature to provide an administrative agency to preserve the general health of the people of the state. It' is a general law.
Section 3, Article XVIII of the Constitution, the home-rule amendment, provides that “Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws.”
Concerning the term “general laws” it was said in Fitzgerald v. City of Cleveland, 88 Ohio St., 338, at page 359: “The general laws [as used in Section 3, Article XVIII] referred to are obviously such as relate to police, sanitary and other similar regulations, and which apply uniformly throughout the state. They involve the concern of the state for the peace, health and safety of all of its people, wholly separate and distinct from, and without reference to, any of its political subdivisions.”
In Board of Health v. Greenville, supra, it was held that the act which authorized the state board of health to require a municipal corporation to install a sewage purification system, and a levy made for the distinct purpose, do not violate the constitution, and in the opinion it is said, at page 29: “The health of the inhabitants of the city is still a matter of concern to the state, and of such vital concern that the general assembly has not thought proper to commit it exclusively to the control and discretion of men who may or may not have any particular ability or experience in sanitary affairs. * * * The sanitary condition existing in any one *577 city of the state is of vast importance to all the people of the state.”
In the recent case of Williams v. Scudder, 102 Ohio St., 305, it is said at page 307: “The constitutional guaranties of life, liberty and the pursuit of happiness are of little avail unless there be clearly implied therefrom the further guarantee of safeguard of the public health.”
Section 13, Article XVIII of the Constitution, provides: “Laws may be passed to limit the power of municipalities to levy taxes and incur debts for local purposes, and may require reports from municipalities as to their financial condition and transac-' tions, in such form as may be provided by law, and may provide for the examination of the vouchers, books and accounts of all municipal authorities, or of public undertakings conducted by such authorities.”' There is thus preserved to the state the general supervisory authority over the taxing powers of the municipalities, and we think it clear that when the legislature in the exercise of the general legislative power conferred by Section 1, Article II of the Constitution, has ádopted general laws providing sanitary and other similar .regulations, such legislation is effective throughout the state, and, being effective throughout the state, the different subdivisions of the state government may be required to contribute as directed by the legislature to the carrying out of the legislation legally enacted.
But it is also contended that the Griswold act, which permits the auditor to retain the sums stated from tire amount of taxes collected, violates Section *578 5, Article, XII of the Constitution, which provides “No tax shall be levied, except in pursuance of law; and every law imposing a tax, shall state, distinctly, the object of the same, to which only, it shall be applied.” It is claimed that the retention of the funds by the county auditor is a diversion of these funds from the abject for which they are levied.
In substance the contention is that the legislature might provide different agencies to disburse township or village funds from those provided by legislation in effect at the time the tax was levied; that is to say, that the constitutional provision does not relate to the officer or official body which applies the sum of money collected by taxation for a certain specific object, but does prevent the diversion of the money from the object required to be distinctly stated when the amount is collected from the taxpayer.
And this is an important question in this case.
State, ex rel. Walton, v. Edmondson, Auditor of Hamilton Co., 89 Ohio St., 351, is cited by the plaintiff in support of its contention. In that case the validity of two statutes was involved. One, the act of April 2, 1908 (99 O. L., 56), to provide for the relief of needy blind, now included in Sections 2962 to 2970, General Code, amended February 18, 1913, conferred upon the county commissioners of the several counties the powers of a blind relief commission and provided for the payments to certain blind people in the county of certain sums to assist the beneficiary, subject to certain specific conditions named in the act, and provided a continuing jurisdiction in the commissioners with reference to the *579 claim of each beneficiary. And with reference to the statute it is said in the opinion, at page 357: “Every safeguard has been adopted to secure the application of the money to the support of the individual and to prevent him from becoming a public charge.” The court held it to be a valid and constitutional .enactment.
The other statute, the validity of which was involved, 103 Ohio Laws, 833, provided for the establishment and maintenance in the city of Columbus of a state institution or cpmmission for the relief and benefit of the needy blind, and prescribed certain benefits to -be conferred upon those, who, by reason of loss of sight, are unable to provide for themselves.
Section 8 of the law (Section 1369-8, General Code) provided for the levying of taxes for the purpose of creating a fund for the blind, as set forth in the act, and also provided that “After the passage of this act and on the demand of the'state treasurer the treasurers of the respective counties shall transfer and pay over to the state treasurer all monies in their possession or that may thereafter come into their possession under present levies for the relief of the blind,” and Section 10 of the law repealed Sections 2962 to 2970 of the General Code, which constitute the act of 1908, above referred to. The statute creating the state institution, that is, the state board, was held to be unconstitutional because it required the expenditure for a private purpose of public funds raised by taxation, inasmuch as it provided for payments to certain persons named, without any of the safeguards provided in the *580 former act. That is to say, in the one instance the purpose was found to be a public purpose and the act was therefore held valid, while in the other the act was found to provide for the payment of public money not for a public purpose and was therefore held invalid. ,
It w,as also held that the provisions of Section 8 (Section 1369-8, General Code), which required the counties to turn over to the state treasurer all monies in their possession for the relief of the blind in the different counties, to be expended under the acts relating to the counties, was a violation of Section 5, Article XII of the Constitution, which is the one involved in this case.
In that case each of the counties of the state had raised a fund of its own under the law of 1908, to be applied for the relief of its own blind by the county commissioners, under the regulations and safeguards provided in that act, whereas by the law providing for the state institution each county was required to turn that fund over to the state to be expended for the purpose of the entire state, and although the object was similar it was not the same •object; that is to say, the money was to be paid to each one of a class of persons without the investigation of each case and the continued duty of the disbursing board provided for in the county relief fund law. The essential prerequisites to the right to receive payments were different and the court held that Section 8 of that act amounted to a diversion of the fund from the object for which it was raised by taxation.
*581 It will be observed that a different situation exists in this case. Here different agencies are provided for the distribution of the fund, but the object for which the tax is raised is the same.
In the Edmondson case there was a definite and specific description of the object and of the agency for the distribution of the money in each of the statutes involved; but the purpose to be accomplished, though similar, was, as indicated, different. Here the object is not definitely and specifically limited; it is general; and while the agency or board is different, the object to be accomplished is the same. There is no diversion of the fund from the object which the constitution requires shall be distinctly stated in the law imposing the tax.
In Porter et al., Trustees, v. Hopkins, Treas., 91 Ohio St., 74, it was contended that the section of the Workmen’s Compensation Law, under which the amounts charged against the local subdivisions of the state should be deducted from the local tax collection and transmitted to the state treasurer by the county officials, was a violation of Section 5, Article XII, above quoted, and, in that case, State, ex rel., v. Edmondson, supra, was relied on in support of the claim stated. In answer to that claim, the court, in the Porter case, after recounting the infirmities pointed out in the Edmondson case, says at page 84: “No such invalidity exists in the act we have under examination. It fixes a certain charge or debt which is to be paid by the several subdivisions named, the amount of which is to be deducted from the taxes collected before they are *582 distributed by the proper ministerial officers. The maintenance' of contingent and general funds for general purposes is provided for by statutes which are familiar.”
The Griswold act does not provide for the levy of taxes. It provides for their disposition and apportionment and the creation of a separate fund to be known as the district health fund.
It is also insisted that it is shown that this law provides for the diversion of funds raised for village and township purposes; that, inasmuch as the agreed statement of facts shows that the amount retained was indiscriminately retained out of the entire amount collected in the village for the general fund and other funds stated, such retention and reversion violate the constitution. It is contended that these are regular levies for local purposes, subject to the limitations prescribed by law for local levies, and the provision for the retention of the amount apportioned is without qualification and its legal significance is to be determined from its possibilities and not from its probabilities.
It is true that the agreed statement shows that the amounts retained by defendant were retained indiscriminately out of the entire amount of taxes collected in the village for the different funds named above; that is, that the amount he retained was retained out of the total lump sum collected. But it does not appear that there will not still be sufficient left in the “amount collected” to fully supply the sinking fund and funds other than the general fund ■and public health fund, as fixed by the proper authorities.
*583 It is elementary that where there are two pos^ si'ble interpretations of a statute, one of.which would render it valid and the other invalid, the court will adopt the former, so as to bring it into harmony with the constitution.
That rule should be observed in this case and it will be held that the statute does not contemplate the application of a tax levied for a certain distinct object to a different object, in disregard of Section 5, Article XII of the Constitution, but that the auditor in retaining the stated pro rata amount will do so only from such funds as are legally applicable to health purposes, in this case the general fund and public health fund.
It will be presumed that the auditor has adopted the legal and valid course until the contrary is shown. If such a final distribution should be made by the auditor as would impair the sinking fund, or any fund other than the general and public health funds, he would be exceeding his authority and would be enjoined. From the pleadings and the agreed statement of facts in this case, it cannot be said that Section 5, Article XII of the Constitution, has been violated. And following the rule above stated we hold the statutes involved to be constitutional and valid.
It is also contended that inasmuch as on January 21, 1920, there were but three members of the board in office, whereas the statute provided that the board should consist of five members, the action which the agreed statement of facts shows they took is illegal.
As to this we think it is sufficient to say that the statute itself provides that a majority shall con *584 stitute a quorum sufficient to transact business, and that it. is disclosed by the record in this case that there was a full quorum at all times present and acting, and in this connection it is to be observed that the requirement of the statute with reference to the submission of the health estimate to the district advisory council was substantially complied with, because it is shown by the agreed statement of facts that the advisory council had before it the estimate and that the health board “adopted the identical budget previously adopted by the district advisory council and transmitted the same to the auditor.” There was, therefore, compliance with the requirements of the law in these ministerial matters.
The city of West Park contends that at the time these steps were taken it had become a city on the promulgation of the census, and that thereby it became a health district under Section 1261-16* General Code.
If it should be conceded that this contention is sound, then we think it is clear that under the statute the health district would be entitled to the money, and not the municipality.
For the reasons given the writ will be denied in Case No. 17039, Village of Cuyahoga Heights v. Zangerle, and in Case No. 17049, City of West Park v. Zangerle, the demurrer to the petition will be sustained.

Writs denied.

Marshall, C. J., Hough, Wanamaker, Robinson, Jones and Matthias, JJ., concur.