**WARNER BROS., INC. and Warner Bros., Distributing Corp., Plaintiffs,**

v.

**David L. WILKINSON, Attorney General of the State of Utah, Defendant.**

**Motion Picture Exhibitors Association of Utah, Inc., Intervenor.**

Civ. No. C 80–0713J.

United States District Court, D. Utah, C. D.

Dec. 21, 1981.

L. R. Gardiner, Jr., Fox, Edwards & Gardiner, Salt Lake City, Utah, Erwin Griswold, Jones, Day, Reavis & Pogue, Washington, D. C., for plaintiffs.

Ralph Finlayson, George Mecham, James Wilson, Sp. Asst. Attys. Gen., for defendant.

Robert Peterson, Salt Lake City, Utah, for intervenor.

## MEMORANDUM OPINION

JENKINS, District Judge.

Plaintiffs commenced this action for declaratory and injunctive relief, seeking a determination that a provision contained in Section 4 of the Utah Motion Picture Fair Bidding Act, Utah Code Ann. § 13–13–1 *et seq.*, is unconstitutional and unenforceable as well as an injunction preventing enforcement of the provision. Section 4 provides as follows:

> If an exhibitor is required by a license agreement to make any payment to the distributor that is based on a percentage of the theatre box office receipts the license agreement shall not require a guarantee of a minimum payment to the distributor or require the exhibitor to charge any per capita amount for ticket sales.

That section is alleged to be facially defective [1] as (1) an unreasonable burden on interstate commerce; (2) as intruding into an area of commerce preempted by the Copyright Act, 17 U.S.C. §§ 106, 201 *et seq.*, (1976); (3) as intruding into an area forbidden by the Sherman Antitrust Act, 15 U.S.C. § 1 *et seq.* (1976); (4) as violative of the First and Fourteenth Amendments' guarantee of freedom of expression, U.S. Const., Amends. 1, 14 § 1; and (5) as depriving plaintiffs of property without due process of law in contravention of Art. I, § 7 of the Utah Constitution.[2]

The matter came on for hearing before this Court on the plaintiffs' motion for sum-

---

1. See Hearing Transcript [hereinafter "Hrg. Tr."] at 10.

2. Utah Const., Art. I, § 7, reads as follows: "No person shall be deprived of life, liberty or property, without due process of law."

mary judgment on October 2, 1981. Appearances were as follows:

Erwin Griswold, Esq., Barbara Kacir, Esq. and L. R. Gardiner, Esq., for the plaintiff Warner Brothers;

Ralph L. Finlayson, Esq., George M. Mecham, Esq. and James L. Wilson, Esq., for the defendant Attorney General;

Robert Peterson, Esq., for intervenor-defendant Motion Pictures Exhibitors Association of Utah.

This Court has reviewed the extensive memoranda and exhibits filed herein by the parties, and having given careful attention to the arguments of counsel at hearing and to the applicable legal authorities, has reached the conclusions set forth below.

## I.

■ This is not a case involving an unreasonable[3] or discriminatory[4] burden on interstate commerce. This seems to have been acknowledged by Warner Brothers in its colloquy with this Court at hearing.[5] Interstate commerce has in no sense been burdened in any meaningfully excessive fashion. "Where the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970); *Huron Portland Cement Co. v. City of Detroit,* 362 U.S. 440, 443, 80 S.Ct. 813, 815, 4 L.Ed.2d 852 (1960); See also *Kassel v. Consolidated Freightways Corp.,* 450 U.S. 662, 101 S.Ct. 1309, 67 L.Ed.2d 580 (1981); *Minnesota v. Clover Leaf Creamery Co.,* 449 U.S. 456, 470–74, 101 S.Ct. 715, 727–729, 66 L.Ed.2d 659 (1981); *Lewis v. BT Investment Managers, Inc.,* 447 U.S. 27, 36, 100 S.Ct. 2009, 2015, 64 L.Ed.2d 702 (1981); *Hunt v. Washington Apple Advertising Comm'n.,* 432 U.S. 333, 350, 97 S.Ct. 2434, 2445, 53 L.Ed.2d 383 (1977); *Exxon Corp. v. Governor of Maryland,* 437 U.S. 117, 98 S.Ct. 2207, 57 L.Ed.2d 91 (1978); *Southern Pacific Co. v. Arizona,* 325 U.S. 761, 65 S.Ct. 1515, 89 L.Ed. 1915 (1945); *Duckworth v. Arkansas,* 314 U.S. 390, 62 S.Ct. 311, 86 L.Ed. 294 (1941); *Osborn v. Ozlin,* 310 U.S. 53, 60 S.Ct. 758, 84 L.Ed. 1074 (1940); J. Nowak, et al., Constitutional Law 256–260 (1978).

## II.

■ There is no antitrust violation here, nor an incursion by the state into federally preempted antitrust territory. See *Allied Artists Pictures Corp. v. Rhodes,* 496 F.Supp. 408, 451 (S.D.Ohio 1980); 1 P. Areeda & D. Turner, Antitrust Law ¶ 209 (1978). The statute seeks to enhance rather than restrict competition; its effect upon interstate commerce "is such as not to conflict but to coincide with a policy which Congress has established with respect to it." *Parker v. Brown,* 317 U.S. 341, 363, 63 S.Ct. 307, 319, 87 L.Ed. 315 (1943); 1 Areeda & Turner, *supra,* at ¶¶ 103, 109, 109a, 109b.[6]

---

**3.** See *e.g., Exxon Corp. v. Governor of Maryland,* 437 U.S. 117, 127–28, 98 S.Ct. 2207, 2214–2215, 57 L.Ed.2d 91 (1978); *Minnesota v. Clover Leaf Creamery Co.,* 449 U.S. 456, 472–74, 101 S.Ct. 715, 728–729, 66 L.Ed.2d 659 (1981); *Hughes v. Alexandria Scrap Corp.,* 426 U.S. 794, 806, 96 S.Ct. 2488, 2496, 49 L.Ed.2d 220 (1976); *Southern Pacific Co. v. Arizona,* 325 U.S. 761, 65 S.Ct. 1515, 89 L.Ed. 1915 (1945).

**4.** See *e.g., Exxon Corp. v. Governor of Maryland, supra,* 437 U.S. at 125–26, 98 S.Ct. at 2213–2214; *Hunt v. Washington Apple Advertising Comm'n.,* 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977); *Dean Milk Co. v. City of Madison,* 340 U.S. 349, 71 S.Ct. 295, 95 L.Ed. 329 (1951). There is no assertion that the statute favors local film distributors as against interstate distributors. *Hunt, supra,* 432 U.S. at 351–352, 97 S.Ct. at 2445–2446.

**5.** See Hrg. Tr. at 70–71.

**6.** This Court rejects the argument by counsel that the statute in question seeks to restrain trade in a manner requiring state supervision on a continuing basis. See *California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.,* 445 U.S. 97, 100 S.Ct. 937, 63 L.Ed.2d 233 (1980); *Parker v. Brown,* 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943). The statute in question is self-executing, leaving nothing further to be decided by the parties or supervised by the state. It is a legislative decision "that would itself satisfy the supervision requirement." 1 Areeda & Turner, *supra,* ¶ 213d at 76. No

### III.

■ Nor is this a copyright case. No one has appropriated a product protected by the copyright law for commercial exploitation against the copyright owner's wishes. See 17 U.S.C. § 201(e) (Supp.1978).[7] The right to transfer or license copyrighted material for use by others under sections 106 and 201 *et seq.* of the Copyright Act has never encompassed a right to transfer the work at all times and at all places free and clear of all regulation; it has meant that the copyright owner has the exclusive right to transfer the material for a consideration to others. See *Morseburg v. Balyon*, 621 F.2d 972, 977 (9th Cir. 1980). "Principles of contract law are generally applicable in the construction of copyright assignments, licenses and other transfers of rights." *Key Maps, Inc. v. Pruitt*, 470 F.Supp. 33, 38 (S.D.Tex.1978) (footnote omitted); see *Gordon v. Vincent Youmans, Inc.*, 358 F.2d 261 (2d Cir. 1965); *Clark v. West*, 137 App.Div. 23, 122 N.Y.S. 380 (2d Dept. 1910), *affirmed* 201 N.Y. 569, 95 N.E. 1125 (1911). States may restrict the forms of enforceable agreements that private parties may enter into through contract law embodied in statutes. See *e.g.*, 2 Corbin on Contracts §§ 275–531, 6A Corbin on Contracts §§ 1373–1541 (1962): *Interstate Circuit, Inc. v. United States*, 306 U.S. 208, 227, 59 S.Ct. 467, 474, 83 L.Ed. 610 (1939) (motion picture copyright owner may not require

exhibition contract terms that violate the antitrust laws)[8].

### IV.

■ This is not a First Amendment case. No one has prohibited free expression through the display of a film by anyone. "Superman II" may be shown wherever an audience can be attracted, whether in a theatre or in the public square. See *e.g.*, *Southeastern Promotions v. Conrad*, 420 U.S. 546, 555, 95 S.Ct. 1239, 1245, 43 L.Ed.2d 448 (1975); L. Tribe, American Constitutional Law §§ 12–21 (1978). That free expression is guaranteed in the marketplace of ideas as a fundamental constitutional principle, see Tribe, American Constitutional Law, *supra*, at § 12–1; *Abrams v. United States*, 250 U.S. 616, 630, 40 S.Ct. 17, 22, 63 L.Ed. 1173 (1919) (Holmes, J., dissenting), however, is not in any way tantamount to a guarantee that such expression will be compensated on terms most desired by its author.[9]

### V.

■ Nor has Warner Brothers been deprived of its property. It still has it. It may still vend it. But, if it does so in motion picture theatres in Utah it must do so in accordance with the applicable Utah law of contracts, including Utah Code Ann. § 13–13–4 (1981 supp.).[10]

unsupervised private power remains. Cf. *Midcal Aluminum, supra*, 445 U.S. at 102–106, 100 S.Ct. at 941–944.

7. 17 U.S.C. § 201(e) provides as follows:
   (e) *Involuntary Transfer.*—When an individual author's ownership of a copyright, or of any of the exclusive rights under a copyright, has not previously been transferred voluntarily by that individual author, no action by any governmental body or other official or organization purporting to seize, expropriate, transfer or exercise rights of ownership with respect to the copyright, or any of the exclusive rights under a copyright, shall be given effect under this title except as provided under Title 11 [Bankruptcy].
   Warner Brothers alleges no such involuntary transfer under this section.

8. A parallel argument would be that videocassettes of Warner Brothers motion pictures marketed by Warner Brothers would be exempt

from the sale of goods provisions of the Utah Uniform Commercial Code, see Utah Code Ann. §§ 70A–2–101 *et seq.*, or that Warner Brothers' contracts are exempted by the Copyright Act from the operation of the statute of frauds, Utah Code Ann. § 25–5–1 *et seq.* (1976). Plaintiff offers no authority for such a view.

9. See *Allied Artists Pictures Corp. v. Rhodes*, 496 F.Supp. 408, 432–35 (S.D.Ohio 1980). Judge Troutman was looking at a different statute through a different lens in *Associated Film Distribution Corp. v. Thornburg*, 520 F.Supp. 971, (E.D.Pa.1981.), rendering the result therein distinguishable from the case at bar.

10. A state may reasonably regulate—even restrict—the use of private property without giving rise to a "taking". See *Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978).

## VI.

■ Reduced to its essence, and expressed in the simplest of terms, Warner Brothers is asking this Court to determine that the legislative effort embodied in section 4 is an "unreasonable" interference with its freedom to make contracts as it pleases, and is therefore an unconstitutional abridgement of "liberty of contract." This claim is similar to that which prevailed in *Lochner v. New York*, 198 U.S. 45, 25 S.Ct. 539, 49 L.Ed. 937 (1905).[11]

Is section 4 unreasonable?

Admittedly, it limits certain kinds of contractual arrangements. Indeed, that is its purpose. In marketing a film, a distributor is forced to make a choice between a guarantee from an exhibitor of a minimum payment, or a percentage of the admissions charged by the exhibitor. He is precluded from having both at the same time.

Such is neither unreasonable nor unconstitutional—either under the federal or state constitutions. It is a rational effort on the part of the legislature to maintain a semblance of sense in distribution in an industry not particularly noted for rationality. The economic interest of the State and its legislative effort challenged herein is not that of restricting competition; in fact, it is

one of preserving and fostering competition, stemming the flow of economic concentration, and limiting monopoly and its fruits—indeed, of effecting in some small way the goal of the antitrust consent decrees heretofore entered on a national level divorcing motion picture distribution from exhibition,[12] thus precluding distributors from doing indirectly what they have agreed not to do directly and have been told not to do at all. This modest effort in the regulation of contracts is in no sense unconstitutional. Liberty of contract is not abrogated by a legislative redistribution of economic bargaining power in the competitive marketplace.[13] "It is by now well established that legislative Acts adjusting the burdens and benefits of economic life come to the Court with a presumption of constitutionality, and that the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way." *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 15, 96 S.Ct. 2882, 2892, 49 L.Ed.2d 752 (1976). The courts are not to function as "superlegislature[s] to judge the wisdom or desireability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect

---

11. Substantive due process analysis in the economic field of the type exemplified by *Lochner* has been lain dormant since *Nebbia v. New York*, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940 (1934) and *West Coast Hotel Co. v. Parrish*, 300 U.S. 379, 57 S.Ct. 578, 81 L.Ed. 703 (1937). Since then, judicial scrutiny of economic legislation has been minimal at best. *E.g., Ferguson v. Skrupa*, 372 U.S. 726, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963). At times the courts have posed even hypothetical grounds justifying enactment of challenged legislation. See *Williamson v. Lee Optical Co.*, 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955). While judicial scrutiny has remained strict in some *non* -economic areas, *e.g., United States v. Carolene Products Co.*, 304 U.S. 144, 152–53 n. 4, 58 S.Ct. 778, 783–784 n. 4, 82 L.Ed. 1234 (1938), economic regulation has been sustained "if any state of facts either known or reasonably inferrable afforded support for the legislative judgment." L. Tribe, American Constitutional Law § 8–7 at 450 (1978).

Recalling that *Nebbia v. New York* required that the legislative "means selected shall have a real and substantial relation to the end sought

to be attained," *id.*, 291 U.S. at 525, Professor Gerald Gunther has urged a more stringent judicial scrutiny of the rational basis of legislation "by testing the reasonableness of the means in terms of the purposes put forth by the defenders of the law, rather than the Court's attribution of purposes a legislature *might* have had[.]" G. Gunther, Cases and Materials on Constitutional Law 540 (10th ed. 1980) (emphasis in original). This Court has applied that analytical approach to this case. See Hrg. Tr. at 28–54.

12. See *United States v. Paramount Pictures, Inc.*, 334 U.S. 131, 68 S.Ct. 915, 92 L.Ed. 1260 (1948), *on remand*, 85 F.Supp. 881 (S.D.N.Y. 1949).

13. Such redistribution of power, for example, forms the basis of much labor legislation, see *Coppage v. Kansas*, 236 U.S. 1, 27, 35 S.Ct. 240, 248, 59 L.Ed. 441 (1915) (Holmes, J., dissenting); W. Oberer, K. Hanslowe & J. Andersen, Cases and Materials on Labor Law (2d ed. 1979), and the antitrust laws. See 1 Areeda & Turner, *supra*, at ¶ 109.

lines ..." *City of New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 2517, 49 L.Ed.2d 511 (1976).

Merely being deprived of the "freedom to bargain for a type of classically utilized [contractual] terms," Hrg. Tr. at 70, does not by definition violate the Constitution; "legislation readjusting rights and burdens is not unlawful solely because it upsets otherwise settled expectations." *Usery v. Turner Elkhorn Mining Co., supra*, 428 U.S. at 16,[14] 96 S.Ct. at 2893.

### VII.

The relief sought under Rule 56 is denied. At this point, it appears to me from the record that it would serve no useful purpose to set this matter down for trial. Nothing remains to be tried that I can see. This has been a facial attack, rather than an attack as to the statute's application to specific facts. Summary judgment therefore shall be entered in favor of the defendant and the intervenor and the complaint herein shall be dismissed. See *Service Personnel, etc. Teamsters Local Union No. 205 v. Carl Colteryahn Dairy, Inc.*, 436 F.Supp. 341, 345 (W.D.Pa.1977).

---

**14.** Warner Brothers implicitly assails the Utah Legislature's decision to regulate motion picture distribution contracts in the manner specified as a denial of equal protection of the laws. See Hrg. Tr. at 72. As the United States Supreme Court observed in *Central Lumber Co. v. South Dakota*, 226 U.S. 157, 33 S.Ct. 66, 57 L.Ed. 164 (1912),

> If the legislature shares the now prevailing belief as to what is public policy and finds that a particular instrument of trade war is being used against that policy in certain cases, it may direct its law against what it deems the evil as it actually exists without

covering the whole field of possible abuses, and it may do so none the less that the forbidden act does not differ in kind from those that are allowed.

226 U.S. at 160, 33 S.Ct. at 67 (citations omitted); see also *Railway Express Agency v. New York*, 336 U.S. 106, 69 S.Ct. 463, 93 L.Ed. 533 (1949). The challenged statute does not even seek to regulate all means of distribution of motion pictures. See *e.g., Salt Lake Tribune*, December 18, 1981, at C9 (Warner Brothers' advertisement for rental of "Superman II" and other motion pictures on videocassettes).