CITY OF CINCINNATI, Appellee,

v.

LANGAN, Appellant.

[Cite as *Cincinnati v. Langan* (1994), 94 Ohio App.3d 22.]

Court of Appeals of Ohio,
Hamilton County.

Nos. C–930193, C–930194.

Decided March 23, 1994.

*Fay D. Dupuis*, City Solicitor, *Terrence R. Cosgrove* and *Roshani Desoyza Hardin*, Assistant City Solicitors, for appellee.

*Michael Hohn*, for appellant.

HILDEBRANDT, Judge.

Defendant-appellant, Peter Langan, appeals from the judgments of the Hamilton County Municipal Court in which he was convicted, following a jury trial, of two violations of Cincinnati Municipal Code 708–37 ("CMC 708–37"),[1] which

---

1. CMC 708–37 proscribes, in pertinent part:

"(a) No person shall sell, deliver, rent, lease, offer or display for sale, or transfer ownership of, acquire or possess a semiautomatic firearm.

"(b) No person shall sell, deliver, rent, lease, offer or display for sale, or transfer ownership of, acquire or possess any detachable magazine with the following capacities:

"More than 10 rifle or carbine rounds;

"* * *

"This section does not apply to any detachable magazine purchased or acquired for use with semiautomatic firearms registered pursuant to section (e)(3) of this ordinance.

"* * *

prohibits the possession of semiautomatic firearms and detachable magazines of certain capacities. Appellant was sentenced to serve one hundred twenty-one days on each charge, with the terms to run concurrently. The trial court, however, credited appellant for the one hundred twenty-one days that he had served in pretrial confinement. Additionally, the court ordered the confiscation of the firearms which appellant had been convicted of possessing.

Appellant advances three assignments of error in these consolidated appeals. For the reasons that follow, we find none of the assignments to have merit and we affirm the trial court's judgments.

## I. Motion to Suppress

In his first assignment of error, appellant asserts that the trial court erred by overruling his motion to suppress. During the hearing on the motion, appellant testified that the authorities performed a warrantless and unauthorized search of his residence while he was handcuffed and sitting in a police cruiser. The city presented evidence that appellant was arrested by a Cincinnati police officer on an outstanding robbery warrant from the state of Georgia. Subsequently, secret service agents who had accompanied the Cincinnati officer inquired about the whereabouts of one Richard Guthrie, Jr. The police officer and a secret service agent both testified that appellant gave them permission to enter the appellant's residence to search for Guthrie. Appellant denied giving them permission. During that search, the authorities recovered from a gun rack on a living room wall, one Ruger 1022 semiautomatic .22–caliber rifle ("Ruger 1022"), two fifty-

---

"(e) Any person who is legally in possession of a semiautomatic firearm that was legally purchased or acquired before April 1, 1989, shall within 30 days from the effective date hereof:

"(1) Remove said 'semiautomatic firearm from within the city limits of Cincinnati; or

"(2) Modify said semiautomatic firearm to either render it permanently inoperable or to permanently make it a device no longer defined as a semiautomatic firearm; or

"(3) Register the firearm with the chief of police pursuant to such procedures as the city manager may establish.

"* * *

"(h) The term 'semiautomatic' means any firearm designed or specifically adapted to fire a single cartridge and automatically chamber a succeeding cartridge ready to fire, with a single function of the trigger.

"(i) For the purpose of this section, 'semiautomatic firearm' shall have the following meanings:

"(1) Any semiautomatic rifle or carbine that was originally designed with or has a fixed magazine or detachable magazine with a capacity of more than 10 rounds;

"* * *

"(5) Any firearm which may be readily restored to an operable semiautomatic firearm, as defined in (1) through (4) above;

"(6) Any part, or combination of parts, designed or intended to convert a weapon into a semiautomatic firearm, as defined in (1) through (4) above, or in any combination of parts from which a semiautomatic firearm may be readily assembled."

round magazines and one ten-round magazine.[2] They also recovered from the bedroom one Ruger Mini 14 .223–caliber semiautomatic rifle ("Ruger Mini 14") and three thirty-round magazines.[3] According to the testimony of the law enforcement officers all the seized items were in plain view.

In order for the seizure of the semiautomatic rifles and magazines to qualify under the "plain view" doctrine, the record must show that "the initial intrusion leading to the item[s'] discovery [by the authorities] was lawful and it was 'immediately apparent' that the item[s] [were] incriminating" to the seizing authorities. *State v. Waddy* (1992), 63 Ohio St.3d 424, 442, 588 N.E.2d 819, 833, citing *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564.[4]

In determining whether the intrusion of the authorities into appellant's residence was lawful as required by the first prong of the "plain view" doctrine, we first acknowledge that a warrantless search based upon voluntary consent is valid. *Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 222, 93 S.Ct. 2041, 2045, 36 L.Ed.2d 854, 860. Whether consent to search is voluntary is a question of fact to be determined from the totality of the circumstances. *Id.* A trial court may find consent to be voluntary from a policeman's testimony that consent was freely given. *State v. Skaggs* (June 21, 1984), Cuyahoga App. No. 47624, unreported, 1984 WL 5099. Furthermore, it is well settled that "[o]n the trial of a case, either civil or criminal, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus. This principle applies to suppression hearings as well as trials. *State v. Fanning* (1982), 1 Ohio St.3d 19, 1 OBR 57, 437 N.E.2d 583.

The trial court, as the trier of fact in the case *sub judice*, obviously found the witnesses who testified that appellant's consent to search his residence was

---

2. These items are the subject of appeal No. C–930193.

3. These items are the subject of appeal No. C–930194.

4. We recognize that at one time the "plain view" doctrine required that the discovery of the items seized also be inadvertent. See *Coolidge v. New Hampshire, supra; State v. Williams* (1978), 55 Ohio St.2d 82, 9 O.O.3d 81, 377 N.E.2d 1013, paragraph one of the syllabus. The United States Supreme Court, however, has since determined that "even though inadvertence is a characteristic of most legitimate 'plain view' seizures, it is not a necessary condition." *Horton v. California* (1990), 496 U.S. 128, 130, 110 S.Ct. 2301, 2304, 110 L.Ed.2d 112, 118– 119. See *State v. Waddy, supra,* 63 Ohio St.3d at 442, 588 N.E.2d at 833, fn. 5.

If inadvertence were still a "plain view" doctrine requirement, however, the record sufficiently demonstrates that the requirement was met in this case because the object of the authorities' search was Guthrie and the authorities, while searching locations where Guthrie might reasonably be hiding, came upon the seized items.

voluntarily given to be more credible than the appellant. Our review of the record convinces us that the trial court's determination that the consent to search for Guthrie was voluntarily given was neither contrary to law nor against the manifest weight of the evidence. Therefore, we hold that the initial intrusion into appellant's residence was lawful.

■ Next, we focus on whether the incriminating nature of the semiautomatic firearms and magazines was immediately apparent to the seizing authorities. This requirement is met when "police have probable cause to associate an object with criminal activity," *State v. Halczyszak* (1986), 25 Ohio St.3d 301, 25 OBR 360, 496 N.E.2d 925, paragraph three of the syllabus, which probable cause "may arise from the character of the property itself." *Id.* at 304–305, 25 OBR at 363, 496 N.E.2d at 931. "[S]uch probable cause to associate an object with criminal activity as is obvious and evident to an ordinary police officer sufficiently satisfies the immediately apparent requirement" of the plain view doctrine. *Id.* at 305, 25 OBR at 363, 496 N.E.2d at 931.

■ At the suppression hearing, a police officer testified he observed in plain view, among other items, the following: (1) a Ruger 1022 and 50–round ammunition clips in a gun rack in the living room of appellant's residence; and (2) a Ruger Mini 14 with three 30–round clips nearby in appellant's bedroom. We hold that there was probable cause for the authorities to associate these items with violation of the city ordinance.

In view of the record, we conclude that the seizure of the semiautomatic rifles and magazines comported with the plain view doctrine and the trial court did not err in refusing to suppress the evidence. "Objects falling in plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced into evidence." *State v. Glover* (Mar. 22, 1978), Hamilton App. No. C–77268, unreported. Accordingly, we overrule appellant's first assignment of error.

## II. Motion to Dismiss

In his second assignment of error, appellant assails the trial court's overruling of his motion to dismiss the instant charges on constitutional grounds made during pretrial proceedings and his motion for reconsideration thereof made after he rested his case. Appellant propounds four arguments in support of this assignment. For the reasons that follow, we find the arguments unpersuasive.

Initially, we note that the city put into evidence the testimony of Cincinnati police Sergeant Gene Hamann, a firearms expert. He testified that he loaded and test-fired the Ruger 1022 by semiautomatically firing thirteen rounds from the accompanying prohibited magazine and the Ruger Mini 14 by firing twenty

rounds from its accompanying prohibited 30–round magazine. He stated that each firearm expelled the projectiles within approximately two or three seconds. Hamann further testified that he could tell by visual inspection how many rounds each magazine could hold. Hamann stated that in his opinion the seized weapons and accompanying magazines were prohibited by CMC 708–37.

The appellant put forth evidence that the weapons had a legitimate use for target-shooting competition and defensive purposes.[5] His witnesses also testified that in their opinions the seized weapons were not necessarily in violation of CMC 708–37.

### A. Ohio Constitution: Right to Bear Arms

Appellant first maintains that the CMC 708–37 violates Section 4, Article I of the Ohio Constitution, which provides:

"The people have the right to bear arms for their defense and security; but standing armies, in time of peace, are dangerous to liberty, and shall not be kept up; and the military shall be in strict subordination to the civil power."

This argument was rejected by the court in *Arnold v. Cleveland* (1993), 67 Ohio St.3d 35, 616 N.E.2d 163,[6] a case involving a similar firearm ordinance enacted by the city of Cleveland. Therein the court recognized that the right to bear arms "is not an unlimited right and is subject to reasonable regulation," *id.* at 47, 616

---

**5.** One of appellant's witnesses, William Bell, testified at the hearing on the motion to dismiss that the Ruger 1022 could possibly be used in Director of Civilian Marksmanship competition. However, he opined that the Ruger Mini 14 would not qualify for such events.

**6.** The ordinance that was the subject of that case provided, in part:
"(a) 'Assault weapon' means:
"(1) any semiautomatic action, center fire rifle or carbine that accepts a detachable magazine with a capacity of 20 rounds or more;
"(2) any semiautomatic shotgun with a magazine capacity of more than six rounds;
"(3) any semiautomatic handgun that is:
"A. a modification of a rifle described in division (a)(1), or a modification of an automatic firearm; or
"B. originally designed to accept a detachable magazine with a capacity of more than 20 rounds.
"(4) any firearm which may be restored to an operable assault weapon as defined in divisions (a)(1), (a)(2) or (a)(3).
"(5) any part, or combination of parts, designed or intended to convert a firearm into an assault weapon as defined in divisions (a)(1), (a)(2) or (a)(3), or any combination of parts from which an assault weapon as defined in divisions (a)(1), (a)(2) or (a)(3), may be readily assembled if those parts are in the possession or under the control of the same person.
"(b) Assault weapon does not include any of the following:
"(1) any firearm that uses .22 caliber rimfire ammunition with a detachable magazine with a capacity of 30 rounds or less.
"(2) any assault weapon which has been modified to either render it permanently inoperable or to permanently make it a device no longer defined as an assault weapon." *Arnold, supra,* 67 Ohio St.3d at 36, 616 N.E.2d at 164, fn. 1.

N.E.2d at 172, and held that the Cleveland ordinance was a "proper exercise of the police power under Section 3, Article XVIII of the Ohio Constitution and [did] not violate Section 4, Article I." *Id.* at paragraph three of the syllabus.

In so ruling the court reasoned:

"In reviewing the reasonableness of an ordinance, we are guided by certain principles. It is not a court's function to pass judgment on the wisdom of the legislation, for that is the task of the legislative body which enacted the legislation. [Citation deleted.] Further, ' "[u]nless there is a clear and palpable abuse of power, a court will not substitute its judgment for legislative discretion. Local authorities are presumed to be familiar with local conditions and to know the needs of the community." ' *Porter v. Oberlin* (1965), 1 Ohio St.2d 143, 149, 30 O.O.2d 491, 494, 205 N.E.2d 363, 368, quoting *Allion v. Toledo* (1919), 99 Ohio St. 416, 124 N.E. 237, syllabus.

"Keeping the foregoing principles in mind, we believe that the ordinance, while admittedly broad in its scope, is a reasonable exercise of the municipality's police power. The ultimate objective of the legislation appears to be public safety. To reach this end, the municipality is attempting to limit the accessibility of certain generally recognized dangerous firearms." *Id.* at 48, 616 N.E.2d at 172–173.

■ Applying this analysis to CMC 708–37, we hold that CMC 708–37, which prohibits possession of semiautomatic firearms in the city of Cincinnati, is a reasonable exercise of the city's police power to protect its citizens from violence stemming from the use of semiautomatic weapons, and, therefore, the ordinance does not violate Section 4, Article 1 of the Ohio Constitution.

### B. Vagueness

Appellant next claims that CMC 708–37 is unconstitutionally vague. Specifically, appellant challenges paragraph (i)(1) of the ordinance which provides [7]:

"(i) For the purpose of this section, 'semiautomatic firearm' shall have the following meanings:

"(1) Any semiautomatic rifle or carbine that was originally designed with or has a fixed magazine or detachable magazine with a capacity of more than 10 rounds."

■ Legislative enactments must be afforded a strong presumption of constitutionality. The legislation must, if possible, be construed in conformity

---

7. Appellant also challenges sections (i)(2) and (i)(3) of CMC 708–37, which pertain to semiautomatic shotguns and semiautomatic handguns, respectively. Appellant was not charged under these sections. Nor were any of the firearms recovered from the appellant's residence contemplated within them.

with the Constitutions of Ohio and the United States. In order to prevail, the party asserting that an ordinance is unconstitutional must prove his assertion beyond a reasonable doubt. *State v. Collier* (1991), 62 Ohio St.3d 267, 269, 581 N.E.2d 552, 553. This means that to escape responsibility, appellant " 'must prove, beyond a reasonable doubt, that the statute was so unclear he could not reasonably understand that it prohibited the acts in which he engaged.' " *Id.* at 269, 581 N.E.2d at 554, quoting *State v. Anderson* (1991), 57 Ohio St.3d 168, 171, 566 N.E.2d 1224, 1226–1227.

In *Collier, supra,* the court observed:

"A tripartite analysis must be applied when examining the void-for-vagueness doctrine. See *Papachristou v. City of Jacksonville* (1972), 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110; *Grayned v. City of Rockford* (1972), 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222; *Kolender v. Lawson* (1983), 461 U.S. 352, 103 S.Ct. 1855, 75 L.Ed.2d 903. In [*State v.* ] *Tanner* [ (1984), 15 Ohio St.3d 1, 15 OBR 1, 472 N.E.2d 689], Justice Locher instructed that '[t]hese values are first, to provide fair warning to the ordinary citizen so behavior may comport with the dictates of the statute; second, to preclude arbitrary, capricious and generally discriminatory enforcement by officials given too much authority and too few constraints; and third, to ensure that fundamental constitutionally protected freedoms are not unreasonably impinged or inhibited. Proper constitutional analysis necessitates a review of each of these rationales with respect to the challenged statutory language.' *Id.,* 15 Ohio St.3d at 3, 15 OBR at 3, 472 N.E.2d at 691." *Id.,* 62 Ohio St.3d at 269–270, 581 N.E.2d at 554.

 Moreover, challenges for vagueness other than those which involve First Amendment freedoms must be examined "in light of the case at hand." *United States v. Mazurie* (1975), 419 U.S. 544, 550, 95 S.Ct. 710, 714, 42 L.Ed.2d 706, 713.

 Our review of the ordinance convinces us that appellant's challenge is feckless. CMC 708–37 prohibits the possession of a semiautomatic firearm. Paragraph (h) clearly defines the term "semiautomatic" and paragraph (i) sets forth examples of semiautomatic firearms, including a semiautomatic rifle originally designed by the manufacturer to be used with a fixed or detachable magazine of more than ten rounds *or* a semiautomatic rifle which *has* a fixed or detachable magazine with a capacity of more than ten rounds, as well as "any part or combination of parts, designed or intended to convert a weapon into a semiautomatic firearm." Furthermore, paragraph (b) prohibits the possession of, *inter alia,* a magazine that holds more than ten rifle or carbine rounds. We agree with the trial court's determination in the entry overruling the appellant's motion to dismiss that the ordinance sets forth that which is proscribed with such specificity as to enable an individual with ordinary intelligence to understand.

See *Collier, supra,* 62 Ohio St.3d at 269, 581 N.E.2d at 554. The weapons and magazines involved in this case are clearly prohibited by the ordinance.

As to the second part of the analysis mandated by *Collier, supra,* we hold that because the ordinance specifically designates and describes the prohibited semiautomatic firearms, arbitrary enforcement of CMC 708-27 is not encouraged. Moreover, the appellant did not allege nor did he adduce any evidence that CMC 708-37 was enforced in an arbitrary, capricious, or unconstrained manner as it pertained to him. Further, as to the third prong of the *Collier* analysis, we held in our prior discussion that such restriction is reasonable and, consequently, we hold appellant's right to possess firearms is not unreasonably inhibited by the ordinance. Accordingly, we hold CMC 708-37 is not impermissibly vague.

### C. Classification

In his third and fourth arguments in support of this assignment, appellant charges that CMC 708-37, as it is applied, denies a class of Cincinnati residents equal protection of law guaranteed by the Fourteenth Amendment to the Constitution of the United States. We find this argument meritless.

CMC 708-37 became effective in September 1989. Paragraph (e) of the ordinance permitted residents of Cincinnati who were legally in possession of proscribed firearms prior to April 1, 1989, within thirty days, to register such weapons with the chief of police, remove the firearms from the city of Cincinnati, or modify the firearms so they did not violate the ordinance. Appellant maintains that paragraph (e) creates a class of persons whose ownership of the prohibited firearms is protected. He claims that citizens who moved to Cincinnati after April 1, 1989, and who brought such firearms with them, as well as permanent residents of the city who legally acquired their proscribed firearms after April 1, 1989, but before the effective date of the ordinance, are deprived of the equal protection of laws.

From our review of the record, we have determined that appellant lacks standing to advance these arguments. Appellant testified that he moved to Cincinnati in September 1990, one year after the effective date of the instant ordinance. He did not have the firearms with him when he moved into the city. Thereafter, he purchased the subject firearms at various flea markets. Under these circumstances, appellant is not a member of the class of persons he has identified. Therefore, he lacks standing to attack the ordinance's constitutionality on the ground that it allegedly violates others' rights to equal protection of law. See *State ex rel. Harrell v. Streetsboro City School Dist. Bd. of Edn.* (1989), 46 Ohio St.3d 55, 63, 544 N.E.2d 924, 932.

 Even if appellant did have standing to bring an equal protection argument, such argument is without merit. Having already decided that the ordinance does not deny any fundamental right to possess weapons, we can similarly dispose of appellant's equal protection claim. A "legislative classification will be upheld if it is rational, absent the denial of a fundamental right." *East Cleveland v. Scales* (1983), 10 Ohio App.3d 25, 29, 10 OBR 32, 37, 460 N.E.2d 1126, 1131, citing to *Williamson v. Lee Optical of Oklahoma, Inc.* (1955), 348 U.S. 483, 488–489, 75 S.Ct. 461, 464–465, 99 L.Ed. 563, 572–573. The Cincinnati City Council has an interest in protecting its citizenry from violent crimes and the use of semiautomatic firearms in its streets and neighborhoods. To best further that goal, the city council decided to ban the entry of semiautomatic weapons into the city after a certain date. Those persons already possessing the weapons were not stripped of their property, but were asked to register, modify, or take the weapons outside the city limits.

 "It is generally recognized that when a legislative body chooses to act to correct a given evil it need not correct all the evil at once, but it may proceed step-by-step." *State v. Buckley* (1968), 16 Ohio St.2d 128, 134, 45 O.O.2d 469, 473, 243 N.E.2d 66, 70. Furthermore, " '[i]f a class is deemed to present a conspicuous example of what the legislature seeks to prevent, the Fourteenth Amendment allows it to be dealt with although otherwise and merely logically not distinguishable from others not embraced in the law.' " *Id.* at 134, 45 O.O.2d at 473, 243 N.E.2d at 71, quoting *Cent. Lumber Co. v. S. Dakota* (1912), 226 U.S. 157, 160–161, 33 S.Ct. 66, 67, 57 L.Ed. 164, 169.

 The fact that persons who did not possess semiautomatic firearms on a certain date are not allowed to possess them thereafter, while persons who did possess semiautomatic weapons prior to that date do not have to surrender those weapons they legally owned prior to the enactment of the statute, does not violate the equal protection rights of one who did not previously possess a semiautomatic weapon. The fixing of a date by which to prohibit the influx of semiautomatic weapons into the city is rationally related to the city council's goal to protect its citizenry from violent crimes and the use of semiautomatic weapons and, thus, the resulting classification contained within the ordinance is neither arbitrary nor unreasonable.

For the reasons stated above, appellant's second assignment of error is overruled.

### III. Jury Instructions

 For his third and final assignment of error, appellant urges that the trial court committed prejudicial error by overruling his motion for certain jury

instructions. Specifically, appellant maintains that the court should have instructed the jury:

"Section 4 of Article I of the Constitution of the State of Ohio provides that, '[t]he people have the right to bear arms for their defense and security.' Therefore, if you find that Defendant, Peter Langan, possessed the rifles in question for his defense and security, you must find the Defendant not guilty."

While evidence was presented below that appellant feared an attack by unidentified Vietnamese citizens, in light of the Ohio Supreme Court's decision in *Arnold v. Cleveland, supra,* which recognizes the right to bear arms is not unlimited and can be reasonably regulated, appellant's proposed instruction is not a correct statement of law. Therefore, the trial court was not required to give it. *State v. Cook* (1992), 65 Ohio St.3d 516, 526, 605 N.E.2d 70, 82, citing *State v. Wenger* (1979), 58 Ohio St.2d 336, 12 O.O.3d 309, 390 N.E.2d 801. Appellant's third assignment of error is overruled. Accordingly, the judgments of the Hamilton County Municipal Court are affirmed.

*Judgments affirmed.*

KLUSMEIER, P.J., and DOAN, J., concur.