OPINION
Appellant Tonya Kimbrough appeals the decision of the Stark County Juvenile Court finding her infant son an abused child pursuant to R.C. 2151.031(D). Appellant gave birth to Lorenzo Blackshear on July 14, 1998. Both appellant and Lorenzo tested positive for cocaine after the birth. On July 16, 1998 the Stark County Department of Human Services ("SCDHS") filed a complaint alleging inter alia that Lorenzo was suffering cocaine withdrawal symptoms, including tremors and uncontrolled shaking. The complaint further alleged that Lorenzo was thereby a dependent, neglected, and/or abused child under the definitions in R.C.2151.04, 2151.03, and 2151.031. The trial court granted temporary custody of Lorenzo to SCDHS on that date. On July 17, 1998 the trial court conducted a "shelter care" hearing pursuant to R.C.2151.28 and continued SCDHS temporary custody status. On September 30, 1998, the magistrate held an evidentiary adjudicatory hearing. In a decision filed October 6, 1998, the magistrate found Lorenzo to be an abused child. The decision additionally read that "* * * an unborn fetus is a `child' under R.C. 2151.031. Therefore harm which occurred prior to birth may constitute abuse. A newborn who tests positive for an illegal narcotic is abuse (sic) per se." Appellant objected to the decision of the magistrate. Judge Stucki approved and adopted the decision on January 6, 1999. Appellant timely appealed and raises the following Assignment of Error:
 THE TRIAL COURT'S FINDING OF ABUSE WHEN AN INFANT TESTED POSITIVE FOR COCAINE AT BIRTH VIOLATES MOTHER'S RIGHTS OF DUE PROCESS AND HER FUNDAMENTAL RIGHTS UNDER THE OHIO AND U.S. CONSTITUTION AND LAWS.
Appellant has divided her sole assignment of error into several sub-issues, which we will address in turn.
ISSUES PERTAINING TO APPELLANT'S REPRODUCTIVE RIGHTS
We first address the issues relating to the principles of reproductive rights. Appellant argues that defining a fetus as a child in this type of action exceeds the scope of R.C. Chapter 2151 and cannot form the foundation of an abuse complaint. In a similar vein, she maintains that the statute does not recognize prenatal fault as abuse. Appellant additionally contends that the application of R.C. Chapter 2151 to prenatal parental abuse violates fundamental constitutional rights of pregnant women. The trial court rendered its abuse finding pursuant to R.C.2151.031(D), which reads as follows: As used in this chapter, an "abused child" includes any child who: * * * (D) Because of the acts of his parents, guardian, or custodian, suffers physical or mental injury that harms or threatens to harm the child's health or welfare. * * * R.C. 2151.011(B)(6)(a) defines "child" as "a person who is under eighteen years of age, except as otherwise provided in divisions (B)(6)(b) to (f) of this section." No definition of "person" is found in R.C. 2151.011; appellant therefore relies on the precedent established in Roe v. Wade (1973), 410 U.S. 113, that a fetus is not a "person" as the term is used in the Fourteenth Amendment to the U.S. Constitution, and that therefore Lorenzo was not a "child" at the times of his exposure to cocaine. She thus maintains that the trial court impermissibly applied the child abuse provisions of R.C. 2151.031
to the situation in the case sub judice. Approximately twenty years after Roe, in Planned Parenthood v. Casey (1992),505 U.S. 833, the United States Supreme Court summarized as follows: It must be stated at the outset and with clarity that Roe's essential holding, the holding we reaffirm, has three parts. First is a recognition of the right of the woman to choose to have an abortion before viability and to obtain it without undue interference from the State. Before viability, the State's interests are not strong enough to support a prohibition of abortion or the imposition of a substantial obstacle to the woman's effective right to elect the procedure. Second is a confirmation of the State's power to restrict abortions after fetal viability, if the law contains exceptions for pregnancies which endanger the woman's life or health. And third is the principle that the State has legitimate interests from the outset of the pregnancy in protecting the health of the woman and the life of the fetus that may become a child. These principles do not contradict one another; and we adhere to each. Id. at 846, emphasis added.
Thus, while Roe, et al. may have excluded a fetus from the category of "persons" under the Fourteenth Amendment, these cases nonetheless do not eliminate the interest of the State in protecting a viable fetus: "[S]ubsequent to viability, the State in promoting its interest in the potentiality of human life may, if it chooses, regulate, and even proscribe, abortion except where it is necessary, in appropriate medical judgment, for the preservation of the life or health of the mother." Roe v. Wade,410 U.S. 113, 164-165.
Appellant further relies on two Ohio Supreme Court holdings in the realm of criminal law. In State v. Dickinson (1971), 28 Ohio St.2d 65, the Court held that a viable fetus not subsequently born alive was not a "person" within the scope of the vehicular homicide statute. In State v. Gray (1992), 62 Ohio St.3d 514, the Court refused to allow a criminal prosecution for child endangering against a mother for substance abuse during her pregnancy. However, in Williams v. The Marion Rapid Transit, Inc. (1949), 152 Ohio St. 114, paragraph two of the syllabus, the Supreme Court of Ohio established a child who is en ventre sa mere (viable in the mother's womb) is in fact a "person": 2. Injuries wrongfully inflicted upon an unborn viable child capable of existing independently of the mother are injuries `done him in his * * * person' within the meaning of Section 16, Article I of the Constitution and, subsequent to his birth, he may maintain an action to recover damages for the injury so inflicted. Id.
We are cognizant that Williams predated Roe; however, nearly twelve years after the latter landmark case the Supreme Court of Ohio similarly ruled that a viable fetus negligently injured en ventre sa mere, and subsequently stillborn, could be the subject of a wrongful death action under R.C. 2125.01. Werling v. Sandy (1985), 17 Ohio St.3d 45. The Court reasoned: The [Roe] court found the compelling point in the state's legitimate interest of protecting potential life to be at viability, as the fetus, at that time, has the capability of meaningful life outside the mother's womb. It follows, therefore, that our decision is entirely consistent with Roe to the effect that a viable fetus is a person entitled to protection and may be a basis for recovery under the wrongful death statute. Id. at 49.
If Ohio law thus allows for such civil remedies in tort, even in light of Roe, et al, we are not persuaded that the juvenile court's remedy of an abuse finding based on Lorenzo's prenatal exposure to cocaine is per se a violation of appellant-mother's constitutional rights. Unlike in Dickinson and Gray above, we are not required to strictly construe statutory terms in favor of the accused; the present Chapter R.C. 2151 action is civil in nature (see, e.g., In re Bolden (1973), 37 Ohio App.2d 7, 34) and brought by the State not against an "accused" parent, but brought in the name of the child for his protection. "It must be noted * * * that the definition of a word in a civil statute does not necessarily import the same meaning to the same word in interpreting a criminal statute. * * * [C]riminal statutes, unlike civil statutes, must be construed strictly against the state." Dickinson, at 70. Moreover, the facts in the case sub judice indicate that Lorenzo suffered post-birth the aftereffects of appellant's cocaine use, a portion of which occurred "recently before giving birth." It is clear that he was subject to potential juvenile court protection upon his birth, as even under appellant's theory he met the definition of "person" upon that event. We are further cognizant of the legislative mandate regarding Ohio's juvenile court system as found in R.C.2151.01(A). The sections in Chapter 2151. of the Revised Code, with the exception of those sections providing for the criminal prosecution of adults, shall be liberally interpreted and construed so as to effectuate the following purposes:
 (A) To provide for the care, protection, and mental and physical development of children subject to Chapter 2151. of the Revised Code. * * *
In that light, we hold that R.C. 2151.031(D) is constitutionally applicable to a child born alive with post-birth symptoms of the exposure of illegal drugs by the child's mother to the viable fetus.
 MATERNAL CUSTODY ISSUES
In her next sub-issue, appellant argues that defining "custody" as inclusive of a pregnant woman's status in regard to her unborn or newborn child exceeds the scope of R.C. 2151. Her underlying premise is that "[i]n order to allege the prenatal fault necessary to find abuse, SCDHS must prove that the parent in fact had custody of the child." Appellant's Brief at 10. We disagree. As noted supra, the trial court based its holding on R.C.2151.031(D), which uses the disjunctive phrasing "[b]ecause of the acts of [the child's] parents, guardian, or custodian * * *." We are not persuaded that SCDHS was required to prove that appellant met a technical definition of a legal or physical "custodian" in order to obtain an abuse finding under this subsection. It is undisputed that appellant, as the natural mother, at least meets the definition of Lorenzo's parent. Moreover, even if there were such a prerequisite as suggested by appellant, the mandate of R.C. 3109.042, which gives statutory designation of a child's legal custodian under such circumstances, would control this issue: An unmarried female who gives birth to a child is the sole residential parent and legal custodian of the child until a court of competent jurisdiction issues an order designating another person as the residential parent and legal custodian. A court designating the residential parent and legal custodian of a child described in this section shall treat the mother and father as standing upon an equality when making the designation. We thus find no merit in appellant's position on this point.
CONSISTENCY WITH STATUTORY PROVISIONS, Appellant also maintains that including prenatal parental abuse within R.C. Chapter 2151 is inconsistent with the basic provisions of the Chapter regarding "reasonable efforts to prevent removal," appointments of guardians, and dispositional alternatives. We turn first to the "reasonable efforts" portion of the statute. R.C.2151.419(A), as written at the time of SCDHS intervention on behalf of Lorenzo, directed in part that "* * * the court shall determine whether the public children services agency * * * has made reasonable efforts to prevent the removal of the child from his home, to eliminate the continued removal of the child from his home, or to make it possible for the child to return home. * * *" Appellant argues that removal of a child from a parent at birth under these circumstances is inconsistent with the above statute. We disagree. The remainder of R.C. 2151.419(A) mandated as follows: * * * The agency shall have the burden of proving that it has made those reasonable efforts. If the agency removed the child from his home during an emergency in which the child could not safely remain at home and the agency did not have prior contact with the child, the court is not prohibited, solely because the agency did not make the reasonable efforts during the emergency to prevent the removal of the child, from determining that the agency made those reasonable efforts.
We would not always expect a children services agency to obtain proof of prenatal drug exposure prior to the time of birth. This portion of the statute provided protection to children in cases such as this where the agency was unable to provide earlier services. We find no inconsistencies as urged by appellant. Appellant also argues that the guardian ad litem and dispositional provisions of R.C. Chapter 2151 demonstrate that the statutory scheme does not correspond to prenatal protection. She cites, for example, Diamond v. Charles (1986), 476 U.S. 54, which denied standing to a physician seeking to defend the constitutionality of an Illinois abortion law as guardian ad litem for unborn fetuses (Id. at 57-59), for the proposition that a fetus is not a proper ward for the appointment of a guardian. R.C. 2151.281(B)(1) requires that "[t]he court shall appoint a guardian ad litem to protect the interest of a child in any proceeding concerning an alleged abused or neglected child * * *." Regarding temporary dispositional alternatives, R.C.2151.33(A) provides: Upon the certificate of one or more reputable practicing physicians, the court may summarily provide for emergency medical and surgical treatment that appears to be immediately necessary to preserve the health and well-being of any child concerning whom a complaint or an application for care has been filed, pending the service of a citation upon the child's parents, guardian, or custodian.
We find no inconsistencies in the application of the cited provisions to Lorenzo's situation. The evidence showed that Lorenzo suffered harm en ventre sa mere and that said harm remained extant following his birth, at which time his welfare became subject to the full shield of these statutory mechanisms. We are not compelled to set precedence leaving unprotected similarly drug-exposed infants solely on the grounds that portions of the available statutory protections are logistically feasible only after the time of birth.
 VAGUENESS AND OVERBREADTH ISSUES
Additionally, appellant argues that the application of R.C. 2151 to prenatal drug abuse cases "is such a vague and overbroad interpretation of the statute that it is in violation of the United States and Ohio Constitutions." Appellant's Brief at 13. We disagree. When examining legislative enactments, there must be afforded a strong presumption of constitutionality. Cincinnati v. Langan (1994), 94 Ohio App.3d 22. The legislation must, if possible, be construed in conformity with the Ohio and United States Constitutions. Id. "In order to prevail, the party asserting that an ordinance is unconstitutional must prove his assertion beyond a reasonable doubt." Id. at 30. In State v. Collier (1991), 62 Ohio St.3d 267, 269-270, the Supreme Court set forth a void-for-vagueness test: A tripartite analysis must be applied when examining the void-for-vagueness doctrine. See Papachristou v. City of Jacksonville (1972), 405 U.S. 156,92 S.Ct. 839, 31 L.Ed.2d 110; Grayned v. City of Rockford (1972),408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222; Kolender v. Lawson (1983), 461 U.S. 352, 103 S.Ct. 1855, 75 L.Ed.2d 903. In [State v.] Tanner [(1984), 15 Ohio St.3d 1], Justice Locher instructed that "[t]hese values are first, to provide fair warning to the ordinary citizen so behavior may comport with the dictates of the statute; second, to preclude arbitrary, capricious and generally discriminatory enforcement by officials given too much authority and too few constraints; and third, to ensure that fundamental constitutionally protected freedoms are not unreasonably impinged or inhibited. Proper constitutional analysis necessitates a review of each of these rationales with respect to the challenged statutory language." Id., 15 Ohio St.3d at 3, 15 OBR at 3, 472 N.E.2d at 691.
In State v. Young, (Ohio 1980), 62 Ohio St.2d 370, the Ohio Supreme court held that "* * * a statute which either forbids or requires the doing of an act in terms so vague that [persons] of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law. * * *" Id. at 372, quoting Connally v. General Construction Co. (1926), 269 U.S. 385, 391. We are not persuaded that a person of common intelligence must guess at the meaning of a child "suffer[ing] physical or mental injury" that could be harmful to "the child's health or welfare." R.C. 2151.031(D), supra. Nor would a person of common intelligence, living in a society unfortunately well-versed by the present proliferation of illegal drugs, necessarily have to conjecture on the potential impact that cocaine or heroin in a newborn's bloodstream might have on that infant's physical or mental health. Accordingly, we hold that R.C. 2151.031(D) is not unconstitutionally vague. Similarly, appellant contends that the sweep of the statute is unnecessarily broad and threatens the freedom of pregnant women to engage in otherwise legitimate activities. She stresses the potential for excessive encroachment by the government into prenatal conduct (e.g., the use of tobacco products, alcohol, or improper nutrients during pregnancy) and the possibility of arbitrary enforcement against racial or socioeconomic groups with disproportionate levels of inadequate prenatal care. However, "embedded in the traditional rules governing constitutional adjudication is the principle that a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court." (Citations omitted.) Broadrick v. Oklahoma (1973),413 U.S. 601, 610. Also, "[t]he fact that [a legislative act] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid * * *." Women's Medical Professional Corporation v. Voinovich (C.A.6 1997), 130 F.3d 187, 194, quoting United States v. Salerno (1987), 481 U.S. 739, 745. We thus reemphasize our focus on the specific circumstances of this case: a child en ventre sa mere subsequently born suffering the effects after birth of his mother's prenatal ingestion of illegal cocaine. Notably, it was the hospital's discovery of cocaine in infant Lorenzo's system, rather than a prenatal test, that originally set in motion SCDHS's intervention and the resulting litigation. The appellant in the case sub judice, like every citizen of this State, has never possessed the constitutional right to use illegal drugs. In contrast, we are certain that Lorenzo is endowed with a fundamental right to live free from abuse. In re Schmidt (1986),25 Ohio St.3d 331, 335. Our holding today protects this fundamental right without creating, as appellant infers, an overbroad web to engulf the prenatal health care decisions of pregnant women. The record does not reveal arbitrary or capricious enforcement of the statute in question. Collier, supra. Accordingly, we hold that R.C. 2151.031(D) is not unconstitutionally overbroad.
 CONCLUSION
ON Upon review of the several crucial issues raised in this appeal, we hold that the trial court's finding of abuse under the circumstances presented did not violate appellant's rights under the Ohio and United States Constitutions. Appellant's Assignment of Error is overruled.
By Farmer, J. Hoffman, P.J. and Edwards, J. concur.