JOURNAL ENTRY and OPINION
Appellant Vicente Acevedo appeals the decision of the trial court convicting him of trafficking in drugs and possession of drugs and sentencing him accordingly. Acevedo assigns the following three errors for our review:
 I. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS EVIDENCE ILLEGALLY OBTAINED IN VIOLATION OF THE FOURTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND SECTION 4, ARTICLE I OF THE OHIO CONSTITUTION.
 II. THE VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE WHEN THERE IS NO SUBSTANTIAL EVIDENCE UPON WHICH A TRIER OF FACT COULD REASONABLY CONCLUDE THAT THE ELEMENTS OF DRUG TRAFFICKING AND POSSESSION OF DRUGS HAD BEEN PROVEN BEYOND A REASONABLE DOUBT.
 III. APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY SECTION 10, ARTICLE 1, OF THE OHIO CONSTITUTION AND THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.
Having reviewed the record and the legal arguments of the parties, we affirm the decision of the trial court. The apposite facts follow.
On August 3, 1998, Det. Rowland Mitchell conducted a surveillance of a home at 3164 W. 30th Street. Prior to the surveillance, the police department received a phone tip that a Hispanic male and a Hispanic female were selling drugs at that location. The caller said that the female would hold the drugs and hand them to the male. Once the sale was made, the male would hand the female the money. Mitchell began his surveillance at approximately 6:30 p.m. Using binoculars, he watched the 3164 W. 30th Street home from an undercover vehicle parked approximately sixty yards away. Mitchell observed lots of vehicular and pedestrian traffic and saw lots of known drug users and sellers hanging around in a nearby parking lot which abutted Lincoln West High School. Mitchell continued to watch the area for approximately two hours. Mitchell saw Acevedo in the parking lot for a short period of time. Acevedo conducted short conversations with people who pulled into the parking lot, then waved them out of the area. Eventually, Acevedo left the area on a motorcycle. Believing he had been spotted, Mitchell opted to end his surveillance for the day and decided to return the following day with a different vehicle.
The next day, August 4, 1998, Mitchell returned to the area in a different undercover vehicle. He was joined in the area by four other detectives and a police sergeant two detectives in an undercover vehicle, two detectives in a detective unit, and the sergeant in a detective unit. Mitchell parked his vehicle approximately sixty to seventy yards from the W. 30th Street home in a spot which allowed him a clear view of the backyard area.
Again using binoculars, Mitchell saw Acevedo outside and saw Vega sitting on the back stairs of the W. 30th Street home. There were many small children playing in the area, none over the age of eighteen. Mitchell observed a blue station wagon pull into the area. A Hispanic male, later identified as Hector Rivera, exited the station wagon and walked toward Acevedo. After a brief conversation, the male handed some money to Acevedo. Acevedo walked over to Vega, who handed him a black vinyl bag. Turning his back to Rivera, Acevedo reached into the bag, removed something and handed the bag back to Vega. He then shook hands with Rivera, who then left the area.
Mitchell radioed the two detectives in the second undercover vehicle and advised them of his observations. He gave them a description of Rivera and of the vehicle he was driving. Mitchell watched Rivera's car turn out of the Lincoln West High School parking lot. As Rivera pulled out of the lot, Mitchell saw detectives Leland Edwards and Remington begin following Rivera's car. As Mitchell remained in his surveillance position, Detectives Edwards and Remington followed Rivera to the parking lot of a nearby discount store. Rivera parked his car in the parking lot. The detectives pulled up alongside Rivera's car and exited their vehicle. They observed Rivera slumped in the seat of his car and saw him apparently snorting something. When the detectives approached the car and identified themselves as police officers, Rivera got out and attempted to run. As he struggled with the detectives, Rivera tossed a small wax paper packet into the air. After Rivera was handcuffed, the detectives recovered it along with another wax packet from the car. Both packets later tested positive for heroin.
Mitchell continued his surveillance. Approximately ten minutes after Rivera was arrested, Mitchell observed Acevedo and Vega get into a Mazda RX7 along with Vega's two-year-old daughter, Selina. Mitchell radioed his supervisor, Sergeant Heffernan, that Acevedo and Vega were entering a vehicle and leaving the area. Heffernan decided to stop the vehicle. Detectives stopped the car at a red light and searched the occupants. Because she complained of stomach pains and asked to go to the hospital, Vega and her daughter were dropped off at the hospital. Acevedo was arrested.
Mitchell remained in his surveillance location. As the traffic stop was made, he saw a child on a bike ride into the area of the W. 30th Street home and talk to the people in and around the area. Immediately, people began going inside their homes or leaving the area. Mitchell was notified by radio that Vega had been taken to the hospital and that Acevedo was in custody. Mitchell was also told that the detectives were returning to 3164 W. 30th Street. Acevedo was brought back to the W. 30th Street address in a patrol car. Detective Terrance Shoulders drove the RX7 back to the house using Acevedo's keys. Mitchell remained in his surveillance spot until the detectives arrived, then moved his undercover vehicle out of the area, parked in a nearby parking area, and walked back to the house.
Acevedo was Mirandized and asked if he would consent to a search of the house. At that time, Acevedo signed a consent to search form. The officers used the keys taken from the RX7 to unlock the door and began searching the house. Acevedo was brought inside and seated in the living room. After the home was searched for one and one-half to two hours, the officers seized $2,245 in cash from a sock in a bedroom dresser drawer, a rental agreement, several sheets of paper with mathematical calculations, a pager, and two small rubber bands. When Vega returned home from the hospital, she was also arrested. Acevedo and Vega were both charged with drug trafficking with schoolyard and juvenile specifications, possession of drugs, and possession of criminal tools the money and the pager.
Acevedo and Vega filed a motion to suppress the evidence seized from the home, alleging that it was the result of an illegal search. The state presented testimony from Detective Rowland Mitchell who testified that, upon their return to the house, Acevedo signed a consent to search form authorizing them to search the house. The officers testified that Acevedo never told them he didn't live at the 3164 W. 30th Street address. They added that Acevedo's driver's license, which was issued the day of his arrest, listed 3164 W. 30th as his address. The officers also retrieved the title and registration to Acevedo's car which also listed 3164 W. 30th as his address.
Vega testified that Acevedo sometimes stayed with her on weekends, but did not live at 3164 W. 30th Street. She testified that she gave Acevedo a key to her apartment because her baby was due any day and she wanted him to have a key in case she went into labor and needed to be taken to the hospital. She said Acevedo did not have any authority to let people into or out of her house. She stated that Acevedo lived on Scranton Road, but she did not know the address there.
Acevedo also denied living at 3164 W. 30th Street. He stated that he rented a room in a house on Scranton Road but could not remember the exact address. He stated that nine people shared a mailbox and that he used Vega's address to receive mail because of concerns about the security of the mail at his home. Acevedo admitted signing the consent form, but maintained that it was signed after the officers had searched his house. He stated that he was in handcuffs in the police car when the police initiated their search and that, after the search, they presented him with both the consent form and the inventory form for his signature. He said he signed the inventory form first, then the consent form. He added that the officers threatened to send Vega's daughter Selina to a home if he refused. Acevedo stated he viewed Selina as his step-daughter and signed the consent form out of concern for her.
The trial court denied the motion to suppress and the case proceeded to trial. At trial, the state presented the testimony of Cleveland Police Detectives Rowland Mitchell, Leland Edwards, Terrence Shoulders, Michael Rinkus, Brian Heffernan, and Neal Hutchinson. Mitchell described the surveillance and eventual arrest of Acevedo and Vega. He also stated that the wax paper packets seized from Hector Rivera were typical of the way heroin was packaged. He added that the packets were often bundled in groups of five to seven packets and secured with a small rubber band like the ones seized from the home. A forensic examiner for the Cleveland Police Department testified that both of the packets seized from the house tested positive for heroin. Detective Shoulders testified that the papers containing the mathematical calculations were typical of the tally sheets used by drug dealers to keep a record of their spending, how much money is owed them, and how much profit is being made from drug sales.
At the end of the state's evidence, the defendants moved for acquittal under Crim.R. 29. The trial court granted the motion on the charge of possession of criminal tools with respect to the pager because the state failed to produce any evidence that the pager was operable or that it was used in connection with drug transactions. The motion was denied as to all other counts.
Vega testified for the defense and stated that she was not involved with the sale of heroin. She denied being outside on the porch on the day in question, and stated that she was not feeling well that day and was inside the house resting. She said that when she and Acevedo were stopped by police, she asked to go to the hospital because she was having pains. She stated that she left the hospital after fifteen minutes because her daughter was upset and could not be comforted. Once she arrived home, the officers repeatedly asked her about a set of keys and who they belonged to. When she told them she didn't know, the officers threatened to take her children away. Vega also stated that the rubber bands seized from her home were used for her daughter's hair. She recognized one of the sheets of paper with mathematical calculations as being in her handwriting and stated that the numbers appearing on the paper were just some numbers she wrote and had nothing to do with drugs. She added that $800.00 of the money found in the house was for her rent payment and that the balance of the money belonged to Acevedo who obtained it from selling two cars several days earlier.
At the end of all the evidence, Acevedo and Vega again moved for a judgment of acquittal under Crim.R. 29. The motion was denied. Both Vega and Acevedo were convicted of drug trafficking and possession of drugs and acquitted of possession of criminal tools. Acevedo was sentenced to seventeen months for drug trafficking and a concurrent twelve months for drug possession. This appeal followed.
In his first assignment of error, Acevedo argues the trial court erred in denying his motion to suppress. He argues that he signed the consent form under duress and after the search was conducted. The state cites the testimony of the police detectives that Acevedo voluntarily signed the consent form before the search was commenced.
Disputed questions of fact on a motion to suppress are to be resolved by the factfinder. State v. Marker (1998),130 Ohio App.3d 200, 202, 719 N.E.2d 1010, 1011. A trial court's factual findings may not be disturbed on review if they are supported by competent, credible evidence. See State v. Bays (1999), 87 Ohio St.3d 15, 21,716 N.E.2d 1126, 1136, certiorari denied (2000),120 S.Ct. 1727, 146 L.Ed.2d 647; State v. Prim (Aug. 26, 1999), Cuyahoga App. No. 74530, unreported, motion for leave to file delayed appeal denied (2000), 88 Ohio St.3d 1436,724 N.E.2d 811. Our review of the trial court's decision on Acevedo's motion to suppress requires us to determine whether the facts, as found by the trial court, are sufficient to establish a voluntary consent to search. See Prim.
A warrantless search is per se unreasonable under theFourth Amendment, subject only to a few specifically established and well-delineated exceptions. State v. Moncrease (Apr. 13, 2000), Cuyahoga App. Nos. 76145, 76146, 76147, unreported, citing Katz v. United States (1967), 389 U.S. 347, 357, 19 L.Ed.2d 576, 585,88 S.Ct. 507, 514. A voluntary consent to the search is one such exception. Id. citing State v. Sneed (1992), 63 Ohio St.3d 3, 6-7,584 N.E.2d 1160, 1165, certiorari denied (1993), 507 U.S. 983,113 S.Ct. 1577, 123 L.Ed.2d 145 (citing Schneckloth v. Bustamonte (1973), 412 U.S. 218, 219, 93 S.Ct. 2041, 2043-2044,36 L.Ed.2d 854, 858). The burden of proof is on the state to show that consent was voluntarily given based upon the totality of the circumstances. Id. citing State v. Retherford (1994),93 Ohio App.3d 586, 596, 639 N.E.2d 498, 505, motions denied (1994), 69 Ohio St.3d 1488, 635 N.E.2d 43.
In this case, Acevedo and the officers gave different versions of how and when the consent form was signed. As factfinder, the trial court resolved the conflicts in favor of the state. See State v. Hill (1996), 75 Ohio St.3d 195, 208, 661 N.E.2d 1068,1081, certiorari denied (1996), 519 U.S. 895, 117 S.Ct. 241,136 L.Ed.2d 170; Cincinnati v. Langan (1994), 94 Ohio App.3d 22, 27,640 N.E.2d 200, 204, appeal dismissed (1994), 70 Ohio St.3d 1425,638 N.E.2d 87. The state presented the testimony of several veteran detectives who testified that Acevedo voluntarily signed the consent form prior to the initiation of the search. This testimony constitutes competent credible evidence to support the trial court's finding that the consent was voluntary. Accordingly, we overrule Acevedo's first assignment of error.
In his second assignment of error, Acevedo argues the jury's verdict was against the manifest weight of the evidence. He points out that no drugs were found on Acevedo's person, in his car, or in the W. 30th Street home. Ohio courts have held that possession may be actual or constructive. See State v. Scalf (1998), 126 Ohio App.3d 614, 619, 710 N.E.2d 1206,1210, appeal dismissed (1998), 82 Ohio St.3d 1431,694 N.E.2d 981; State v. Kobi (1997), 122 Ohio App.3d 160,164, 701 N.E.2d 420, 430; State v. Mann (1993),93 Ohio App.3d 301, 308, 638 N.E.2d 585, 589, appeal dismissed (1994), 70 Ohio St.3d 1412, 637 N.E.2d 9. Constructive possession may be established by circumstantial evidence. State v. Price (Dec. 2, 1999), Cuyahoga App. No. 75445, unreported, citing State v. Jenks (1991), 61 Ohio St.3d 259, 272, 574 N.E.2d 492, 502, rehearing denied (1991), 62 Ohio St.3d 1410,577 N.E.2d 362. A showing that the offender was able to exercise dominion or control over the object is sufficient to establish constructive possession, even if the object is not within his immediate physical possession. State v. Dammons (Dec. 24, 1998), Cuyahoga App. No. 73873, unreported, citing State v. Wolery (1976),46 Ohio St.2d 316, 332, 348 N.E.2d 351, 361, certiorari denied Wolery v. Ohio (1976), 429 U.S. 932, 97 S.Ct. 339,50 L.Ed.2d 301. Dominion and control may be proven by circumstantial evidence alone. State v. Jimenez (Nov. 25, 1998), Cuyahoga App. No. 73804, unreported, See, also State v. Grundy (Dec. 9, 1998), Summit App. No. 19016, unreported, citing Jenks, 61 Ohio St.3d at 272,574 N.E.2d at 502. It is true that no heroin was found on Acevedo's person, in his car, or in the W. 30th Street home. However, Detective Mitchell, a veteran with many years experience investigating drug cases, testified that he observed Acevedo conduct what he believed was a drug transaction with Hector Rivera. According to Mitchell, after a brief conversation, Acevedo accepted money from Rivera, then retrieved a black pouch from Vega. Acevedo turned his back to Rivera, reached into the pouch, removed something and transferred it to Rivera via a handshake a common method for transferring drugs surreptitiously during a drug transaction. Rivera immediately left the area and was found a few blocks later snorting heroin.
Officer Mitchell's testimony constituted circumstantial evidence from which a jury could reasonably conclude that Acevedo exercised dominion and control over the heroin shortly before he transferred it to Rivera. It is well settled that a conviction will not be reversed as against the manifest weight of the evidence unless the jury clearly lost its way in evaluating the evidence and created a manifest miscarriage of justice necessitating a new trial. State v. Earle (1997),120 Ohio App.3d 457, 473, 698 N.E.2d 440, 450, discretionary appeal not allowed (1997), 80 Ohio St.3d 1475. Acevedo points out several inconsistencies in Detective Mitchell's testimony. However, the jury, as factfinders, had the primary responsibility for assessing Mitchell's credibility. See State v. Loza (1994), 71 Ohio St.3d 61,69, 641 N.E.2d 1082, 1096, certiorari denied (1995),514 U.S. 1120, 115 S.Ct. 1983, 131 L.Ed.2d 871. We find no basis upon which to disagree with the jury's resolution of the conflicting testimony. See State v. Thompkins(1997),78 Ohio St.3d 380, 387, 678 N.E.2d 541, 546-547, reconsideration denied (1997), 79 Ohio St.3d 1451,680 N.E.2d 1023. Acevedo's second assignment of error is overruled.
In his third assignment of error, Acevedo argues he was denied the effective assistance of counsel by his trial counsel's failure to introduce a statement by Hector Rivera that he did not purchase heroin from Acevedo. In order to demonstrate ineffective assistance of counsel, a defendant must prove that defense counsel's performance was deficient and that prejudice resulted from that performance. To prevail on a claim of ineffective assistance of counsel, the defendant has the burden of proving two things: (1) that defense counsel's performance fell below an objective standard of reasonableness and (2) that counsel's deficient performance prejudiced the defense. State v. Reynolds (1998), 80 Ohio St.3d 670, 674, 687 N.E.2d 1358, certiorari denied (1998), 524 U.S. 930, 118 S.Ct. 2328, 141 L.Ed.2d 702, citing Strickland v. Washington (1984), 466 U.S. 668, 687,80 L.Ed.2d 674, 693, 104 S.Ct. 2052, 2064. A showing of prejudice means a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. State v. White (1999), 85 Ohio St.3d 433,450, 709 N.E.2d 140, 157, certiorari denied (1999),120 S.Ct. 345, 145 L.Ed.2d 270. [A] reasonable probability is a probability sufficient to undermine [the court's] confidence in the outcome. Id. (Citations omitted.)
Acevedo argues that Rivera's statement would have had a direct bearing on the outcome of the case. However, this argument falls far short of showing a reasonable probability that the outcome of the trial would have been different if the statement had been admitted. Any statement by Rivera that he did not purchase heroin from Acevedo would have had to be weighed against Officer Mitchell's testimony that he saw what appeared to be a drug transaction between Rivera and Acevedo immediately before Rivera was apprehended with heroin in his possession.
The record reveals that Acevedo's trial counsel subpoenaed Rivera. Trial counsel stated on the record that Rivera had appeared at the courthouse, but had been instructed by his attorney not to wait around. Acevedo's trial counsel stated that he had tried to contact Rivera, but had been unsuccessful. Acevedo's trial counsel spoke to Rivera's attorney who told him that it was up to Rivera whether to testify. Acevedo's trial counsel stated on the record that he did not believe Rivera was going to appear, stating his belief that Rivera was avoiding the subpoena because his attorney advised him not to testify. Under the circumstances, Acevedo's trial counsel opted not to seek enforcement of the subpoena.
 I am not going to ask this court at this time to enforce that subpoena, because of the fact he has not been sentenced. If he comes in and he refuses to testify, then that will just create an issue for the jury. Having said that on the record, we are going to rest without presenting any evidence.
(Tr. 614.)
Acevedo's trial counsel made the strategic decision not to pursue the subpoena of Rivera because he was concerned that Rivera might refuse to testify. He stated that, although Rivera could be forced to appear, he could not be forced to testify because he had not yet been sentenced. See State v. Griffin (1992),73 Ohio App.3d 546, 552, 597 N.E.2d 1178, 1182. (Co-defendant could properly assert Fifth Amendment privilege where he had pleaded guilty but had not yet been sentenced because the plea bargaining process was not yet complete.) Trial counsel's decisions about which witnesses to call at trial are matters of trial strategy and will generally not be held to constitute ineffective assistance of counsel. State v. Smith (1996), 115 Ohio App.3d 419,426, 685 N.E.2d 595, 599, appeal dismissed (1997),79 Ohio St.3d 1458, 681 N.E.2d 440, citing State v. Clayton (1980), 62 Ohio St.2d 45, 49, 402 N.E.2d 1189, 1192, certiorari denied (1980), 449 U.S. 879, 101 S.Ct. 227,66 L.Ed.2d 102 and State v. Hunt (1984), 20 Ohio App.3d 310,312, 486 N.E.2d 108, 110. Accordingly, Acevedo has failed to meet his burden to show that trial counsel's decision not to introduce the statement fell below an objective standard of reasonableness. Therefore, Acevedo's third assignment of error is overruled.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
TIMOTHY E. McMONAGLE, P.J., and KENNETH A. ROCCO, J., CONCUR.
 _________________________________ PATRICIA ANN BLACKMON, JUDGE